**ALBIE'S FOODS, INC., Plaintiff,**

v.

**MENUSAVER, INC., Defendant.**

No. 01–10022–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Nov. 1, 2001.

John E. Nemazi, Robert C. Brandenburg, Kevin J. Heinl, Brooks & Kushman, Southfield, MI, for plaintiff.

Robert V. Vickers, Body, Vickers, Cleveland, OH, Daniel S. Opperman, Braun, Kendrick, Saginaw, MI, for defendant.

***OPINION AND ORDER DISMISSING CASE PURSUANT TO THE FEDERAL DECLARATORY JUDGMENT ACT***

LAWSON, District Judge.

The plaintiff, Albie's Foods, Inc. (Albie's), filed a complaint in this Court on January 11, 2001 seeking a declaratory judgment as to the invalidity of a certain patent purportedly assigned to the defendant. The defendant filed a motion to dismiss under Fed.R.Civ.P. 12(b) on May 17, 2001 and the plaintiff filed a motion for leave to amend the complaint on June 8, 2001 to substitute a different party as defendant. These motions were referred to United States Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1. Magistrate Judge Binder issued his report on August 17, 2001 recommending that the plaintiff's motion to amend the complaint be granted and the defendant's motion to dismiss be denied as moot. However, on May 16, 2001, an action was filed against Albie's in the Northern District of Ohio seeking coercive relief for infringement of the same patent which is the subject of this case. Because the Court determines that the patent infringement action in Ohio will adequately address the issues in the

instant case, the Court will exercise its discretion and decline to exercise jurisdiction over this declaratory judgment action.

## I.

Albie's is a manufacturer and seller of food products. In the summer of 2000, Albie's began selling a prepared peanut butter and jelly sandwich product. In December 2000, attorney Robert V. Vickers, attorney for J.M. Smucker Company (Smucker), sent Albie's a letter stating that the Albie's sandwich product "establishes a clear infringement of United States Letters Patent No. 6,004,596 [the '596 patent] directed to the famous Smucker product sold nationally under the trademark 'UNCRUSTABLES.'" The letter demanded that Albie's cease and desist from violating Smucker's patent.

After receiving the letter, Albie's investigated and learned that the '596 patent was owned by Menusaver, Inc., a wholly-owned subsidiary of Smucker. Through its investigation, Albie's apparently concluded that the '596 patent was granted in error. Therefore, Albie's filed the complaint in the instant case requesting entry of a declaratory judgment that (1) Albie's did not infringe the '596 patent and (2) the '596 patent is invalid. Defendant Menusaver was served with a copy of the summons and complaint on May 4, 2001.

On May 16, 2001, Smucker filed a patent infringement complaint in the United States District Court for the Northern District of Ohio (the Ohio case). The case was assigned to the Honorable Dan Aaron Polster. The complaint alleges that Albie's infringed the '596 patent by marketing its sandwich product, and requests that Judge Polster (1) issue a preliminary and permanent injunction restraining Albie's from infringing the '596 patent; (2) order an accounting and payment by Albie's to Smucker of any damages resulting from infringement of the '596 patent; (3) find the Ohio case "exceptional"; (4) require Albie's to pay for the cost of the action and reasonable attorney fees; and (5) grant other relief the Court determines to be just.

The motion to dismiss filed in the present case is based on the allegation that the true owner of the '596 patent is not Menusaver but Smucker, and that therefore Albie's has sued the wrong party in this Court. The magistrate judge found that Menusaver assigned the patent to Smucker on December 22, 2000 and recorded the assignment in the patent office on January 5, 2001. Albie's does not dispute this fact, but instead has moved to amend the complaint to substitute Smucker, who is the plaintiff in the Ohio case, as a defendant in the case in this Court. Albie's contends that its amendment should relate back to the filing date of the original complaint, and that its lawsuit for declaratory relief should proceed in this district because it was filed first in time compared to the Ohio infringement case for coercive relief.

## II.

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes courts to adjudicate controversies between parties before a conflict blossoms into a larger and more costly claim. It permits suit when a controversy, although real and immediate, has not ripened to the point where one of the parties could invoke a coercive remedy, that is, a suit for damages or an injunction. The Act enables "parties to adjudicate disputes before either suffers great damage." 12 James Wm. Moore et al., Moore's Federal Practice § 57.03[2] (3d ed.1999). The party seeking declaratory relief must establish federal subject matter jurisdiction and an actual controversy. 28 U.S.C. § 2201(a).

■ However, the Act confers "unique and substantial discretion" *not* to exercise jurisdiction. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). A court may thus decline to hear a declaratory judgment action even where jurisdiction exists. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). In the exercise of this discretion, the general test is whether "the judgment will serve a useful purpose in clarifying and settling the legal relationships in issue and whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Sunshine Corp.*, 74 F.3d 685, 687 (6th Cir.1996)(internal quotes omitted).

■ In deciding whether to proceed with a declaratory judgment action, courts consider the following factors: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or to provide an arena for a race for res judicata; (4) whether the use of the declaratory action would increase friction between federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternate remedy which is better or more effective. *Id.* (quoting *Grand Trunk Western R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir.1984)).

■ In the case now before the Court, the declaratory judgment action would clarify the legal positions of the parties and would, if no infringement were found, settle the controversy, assuming, of course, that the proper parties were before the Court. If infringement were found, additional amendments would be required to afford complete relief in the form of coercive remedies. The Ohio case, however, can clarify the legal positions of the parties (who are the correct parties to the controversy) and can settle the controversy whether or not infringement is found. Further, damages and injunctive relief may be awarded with the case in its present posture, if appropriate.

There is evidence of "procedural fencing" in the instant case. Albie's admits that it filed the declaratory judgment action in January precisely to preserve its right to litigate in this district, which is where the plaintiff resides. Br. in Supp. of Mot. to Amend at 3. Albie's did not serve the lawsuit until May 4, 2001. Smucker filed the infringement action in Ohio, its home forum, twelve days later.

An inquiry concerning comity between federal and state courts is not applicable here because both actions are pending before federal district courts. The existence of an adequate remedy under 35 U.S.C. § 281, *et seq.*, is one of the factors this Court considers in its decision to decline to exercise jurisdiction. However, "the normal principle that federal courts should adjudicate [declaratory judgment] claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288, 115 S.Ct. 2137. As courts have noted, concurrent litigation in federal courts is a waste of judicial resources. *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 279 (7th Cir.1988).

■ A well-established doctrine among federal courts of equal rank is the "first-to-file" rule. The rule provides that when two lawsuits involve substantially the same parties and purpose, the court where the first suit is filed should proceed to judgment. *Plating Res., Inc. v. UTI Corp.*, 47 F.Supp.2d 899, 903 (N.D.Ohio 1999)(citing *Barber–Greene Co. v. Blaw–Knox Co.*, 239

F.2d 774, 778 (6th Cir.1957)). The "first-to-file" rule is discretionary, however, and is not to be applied "too rigidly or mechanically." *Id.*

The Court of Appeals for the Seventh Circuit has held that a declaratory judgment action filed prior to an infringement action would serve no useful purpose because the patent owner's right to a coercive remedy has accrued. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 749 (7th Cir.1987). In *Tempco,* the use of a federally registered trademark, the omega symbol, on temperature measurement and control devices was at issue. After the parties communicated for about a month, a declaratory judgment action was filed in the Northern District of Illinois four days before an infringement action was filed in the District of Connecticut. The Court noted that

> [l]itigation of this type is extremely time-consuming and wasteful. There is no outstanding factor in this case which points to trial of this action in either Illinois or Connecticut. Such will inevitably be the case in actions such as this where the owner of a trademark is in one location, and an alleged infringer is at some distance. Because the two actions are both in federal district courts, there are no concerns of comity or federalism which might enter the picture where a declaratory judgment action is pursued in federal court and a coercive remedy is pursued in state court.... While we do not mean to fault the parties for their attempts to protect themselves, from society's point of view it is essentially irrelevant which one of them bears the expense and inconvenience of litigating in a distant forum—someone must. To that cost must be added, however, the cost of decision.

*Id.* at 748–49.

Likewise, in the present controversy, one of the litigants will be put to the inconvenience of litigating outside of its home district. The Court finds that the inconvenience is of little significance, however, inasmuch as Akron, the site of the Ohio case, is not a great distance from the Eastern District of Michigan, there are many routes and means of travel to that city, and both districts are governed by the law of the Sixth Circuit. Moreover, the proper parties are now before the Court in Ohio, obviating the need to amend the pleadings and summon new parties before the court. Further, the controversy as framed by the pleadings in the Ohio case has ripened to the point that permits a claim for damages and an injunction, and the fact that a coercive remedy has been invoked will help sharpen and refine the issues to be decided, which will include a full range of remedial measures.

### III.

This Court has considered and weighed all of the applicable factors in exercising its discretion as conferred by the Declaratory Judgment Act. After due consideration, this Court determines it is appropriate to decline to exercise jurisdiction over the present case, and the parties should seek their remedy in the matter now pending in the Northern District of Ohio.

Accordingly, it is **ORDERED** that the present action is **DISMISSED** without prejudice.

It is further **ORDERED** that Magistrate Judge's Report and Recommendation is **REJECTED** as moot.

It is further **ORDERED** that the defendant's motion to dismiss under Fed. R.Civ.P. 12(b) [dkt # 6] and plaintiff's motion for leave to amend the complaint [dkt # 11] are **DENIED** as moot.